**FILED
CLERK**

12:16 pm, Apr 02, 2020

**U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
EUFRONIO JOLLADO BADURIA, AND
DANIEL LLAGAS, individually and on behalf of
all persons similarly situated,

                Plaintiffs,

v.

SEALIFT HOLDINGS, INC., SEALIFT, INC.,
SEALIFT INC. OF DELAWARE,
BLACK EAGLE SHIPPING, LLC, FORTUNE
MARITIME, LLC, SAGAMORE SHIPPING, LLC,
SEALIFT LLC, SEALIFT TANKSHIPS, INC., and
REMINGTON SHIPPING, INC.,

                Defendants.
----------------------------------------------------------------X

**MEMORANDUM & ORDER**
CV 19-364 (GRB)(ARL)

**GARY R. BROWN, United States District Judge:**

      Before the Court is a motion to stay, dismiss, or transfer this action to a federal district court in Louisiana by defendants Sealift Holdings, Inc., Sealift, Inc., Sealift Inc. of Delaware, Black Eagle Shipping, LLC, Fortune Maritime, LLC, Sagamore Shipping, LLC, Sealift LLC, Sealift Tankships, Inc., and Remington Shipping, Inc. (collectively "Sealift" or "defendants"). Docket Entries ("DE") 47, 52. For the reasons stated herein, defendants' motion is GRANTED, and the action shall be transferred to the United States District Court for the Western District of Louisiana where a parallel action is pending.

**BACKGROUND**

*1. Instant Action*

      On January 17, 2019, plaintiffs Eufronio Jollado Baduria and Daniel Llagas (collectively "plaintiffs") commenced this putative class action by filing a complaint. DE 1. This action was initially assigned to the Honorable Sandra J. Feuerstein, Senior U.S. District Judge. On January

1

25, 2019, plaintiffs requested that this case be designated as related to *Dziennik v. Sealift, Inc.*, No. 05-CV-4659, which case is assigned to the Honorable Dora L. Irizarry, Senior U.S. District Judge. DE 14. On March 29, 2019, defendants filed the instant motion to stay, transfer or dismiss this case. DE 47. Judge Feuerstein referred the motion for a report and recommendation to the undersigned who was, at that time, the assigned Magistrate Judge. DE 52. On July 30, 2019, Judge Feuerstein denied the request to designate this case as related to *Dziennik* after review of the parties' submissions and after consultation with Judge Irizarry. Electronic Order dated July 30, 2019. On January 28, 2020, the matter was then transferred to the undersigned following confirmation as a U.S. District Judge.

According to the complaint, defendants are various foreign and domestic corporations and limited liability companies who are "domiciled at 68 West Main Street, Oyster Bay, New York 11771." Compl. ¶¶ 2(i)-(x). Plaintiffs allege that defendants operate a single business enterprise, called the "Sealift Fleet" or "Sealift Vessels," which enterprise offers deep-sea freight transportation to various locations, including "South Korea, Japan, Africa, Singapore, Canary Islands, and the atoll of Diego Garcia located in the Indian Ocean." *Id.* at ¶¶ 2, 8-16, 20. Plaintiffs are citizens of the Republic of the Philippines, who were employed as seamen on board the Sealift Vessels from July 11, 2006 through the filing of the complaint. *Id.* at ¶¶ 1, 18.

Plaintiffs allege that defendants engaged in a panoply of employment violations, including (1) hiring plaintiffs in excess of the sixty (60) day cap for foreign "riding gang members" under 46 U.S.C. § 8106; (2) employing plaintiffs as "seafarers" without a merchant mariner document as required by 46 U.S.C. § 8701; prohibiting plaintiffs from signing Shipping Articles as mandated by 46 U.S.C. § 10302; failing to pay plaintiffs the highest rate of pay under 46 U.S.C. § 11107; and failing to pay delay or penalty wages under 46 U.S.C. § 10313. *Id.* at ¶¶

22-29, 36, 53. Plaintiffs seek a certification of class action with plaintiffs as class representatives, payment of full overtime wages, recognition of a maritime lien against Sealift vessels for unpaid wages, overtime wages, and delay and penalty wages, interests, punitive damages, and attorney's fees and costs. Compl. ¶¶ 18-19.

### 2. First Action: Llagas v. Sealift Holdings Inc.

On March 17, 2017, plaintiff Llagas initially filed a putative class action petition in the Louisiana state court against many of the same defendants—Sealift Holdings, Inc., Sealift, Inc., Black Eagle Shipping, LLC, Fortune Maritime, LLC, Sealift Tankships, LLC, Sagamore Shipping, LLC, and Remington Shipping, LLC ("Louisiana Defendants"). La. Pet., No. 17-CV-472, DE 1-1 ("La. DE").

That state court action was commenced by a petition alleging that Louisiana Defendants are various corporations and limited liability companies domiciled at "68 West Main Street, Oyster Bay, New York 11771," and that Louisiana Defendants operate a single business enterprise called the "Sealift Fleet." La. Pet. ¶¶ 2-3. Llagas was a citizen and domiciliary of the Republic of the Philippines, and was employed as a "fitter" on board various vessels owned by Sealift. *Id.* at ¶ 4. He sought to represent a class of individuals, mostly Filipino domiciliaries, who held the position of "fitter" on board the Sealift vessels. *Id.* at ¶ 5.

In the Louisiana action, Llagas similarly alleged that defendants engaged in a variety of employment violations, including having Llagas and other foreign nationals work in excess of sixty days contrary to 46 U.S.C. § 8106,[1] not permitting them to possess Merchant Mariner's documents under 46 U.S.C. § 8701, not allowing them to sign Shipping Articles under 46 U.S.C.

---

[1] The Petition states "46 U.S.C. § 8601," but there is no such statute. La. Pet. ¶ 6.

§ 10302, not paying them the highest rate of pay under 46 U.S.C. § 11107, and not paying delay and penalty wages under 46 U.S.C. § 10313. *Id.* at ¶¶ 6-13.

Additionally, the relief sought in the Louisiana action largely mirrors that in the instant action, except Llagas also sought a Writ of Attachment as to one of Sealift's vessels, M/V Black Eagle, which the state court issued. La. Pet. 7-9; La. DE 1-1 at 8, 20-23. Louisiana Defendants removed the petition to the United States District Court for the Western District of Louisiana based on federal question jurisdiction. La. DE 1; *see also* La. DE 55 at 2.

On May 2, 2017, Llagas moved to transfer venue to the United States District Court for the Middle District of Louisiana. La. DE 6. On July 11, 2017, the assigned magistrate judge denied the motion to transfer venue, holding that email and telephone exchanges between attorneys regarding the potential transfer of the case to the Middle District of Louisiana do not constitute a binding agreement on a transfer of venue. La. DE 22. Plaintiff Llagas appealed the decision to the district court. La. DE 27. On November 30, 2017, the district court affirmed the magistrate judge's decision. La. DE 53 at 7.

On May 2, 2017, Llagas filed a motion for remand to the state court, and defendants cross-moved to stay the litigation and compel arbitration. La. DE 8, 9. Llagas then moved to certify a class on August 3, 2017. La. DE 36. On July 27, 2018, the magistrate judge issued a report and recommendation, recommending, (1) removal was proper based on plaintiff Llagas's stipulation to federal question jurisdiction, (2) demand for a jury trial should be denied because Llagas does not dispute the making of an arbitration agreement or that Llagas signed them before working on board Sealift's vessels, (3) Llagas is bound to arbitrate his claims in the Philippines based on an arbitration agreement incorporated into his employment contract, and (4) the motion to certify a class action should be denied without prejudice to renewal because issues of

4

arbitrability must be resolved before the determination of a class action.  La. DE 55.  Llagas objected to the report and recommendation.  La. DE 58.

On September 24, 2018, plaintiff Llagas filed a unilateral "stipulation" that his claims in the Petition are for "sums due pursuant to 46 U.S.C. § 11107 and not for wages for services performed under any Contract of Employment."  La. DE 69.  On February 5, 2019, the magistrate judge issued a supplemental report and recommendation, recommending, "[d]espite plaintiff's 'Stipulation' we still find a valid arbitration agreement existed and binds plaintiff to arbitrate his claims."  La. DE 76.  Llagas again objected to the supplemental report and recommendation.  La. DE 77.  Before the issuance of the decision on the supplemental report and recommendation, plaintiffs filed the complaint in this action.  DE 1.

On March 20, 2019, the district court adopted the original and supplemental report and recommendation in a judgment.  La. DE 84.  Llagas filed a motion to reconsider.  La. DE 85.  Llagas also sought a writ of mandamus, which the Court of Appeals for the Fifth Circuit denied.  La. DE 89.  On June 7, 2019, the district court granted the motion to reconsider to "the extent that an Amended Judgment will issue herewith, clarifying the reasoning of this Court but not altering the result," and denying the motion in all other respects.  La. DE 91.  On June 12, 2019, the district court issued an amended judgment, adhering to the previous result of the court, which included a clarification of the reasoning.  La. DE 92.  The parties proceeded to arbitration.  La. DE 94.

## LEGAL STANDARD

In the Second Circuit, "[t]he first-filed rule states that, in determining the proper venue, '[w]here there are two competing lawsuits, the first suit should have priority.'"  *New York*

5

*Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010); *Employers Ins. of Wausau v. Fox Entm't Grp., Inc.*, 522 F.3d 271, 274-75 (2d Cir. 2008). "The rule 'embodies considerations of judicial administration and conservation of resources' by avoiding 'duplicative litigation and honoring the plaintiff's choice of forum." *Wausau*, 522 F.3d at 275.

As Judge Spatt held, "[p]roper application of the 'first-filed' rule requires that the first and subsequently filed case(s) have either identical or substantially similar parties and claims. Importantly, application of the rule does not require *identical* parties, but merely requires substantial overlap." *Wyler-Wittenberg v. Metlife Home Loans, Inc.*, 899 F. Supp. 2d 235, 244 (E.D.N.Y. 2012); *see also Burke v. Bimbo Bakeries USA, Inc.*, No. 19-CV-902 (MAD)(ATB), 2019 WL 6068038, at *2 (N.D.N.Y. Nov. 15, 2019).[2]

There are two exceptions to the first-filed rule: (1) where "special circumstances" warrant giving priority to the second suit, and (2) where the "balance of convenience" favors the second-filed litigation. *Wausau*, 522 F.3d at 275; *see also New York Marine & Gen. Ins. Co.*, 599 F.3d at 112. Such "special circumstances" are not present in this case, and plaintiffs have not suggested otherwise[3]

---

[2] Courts are divided as to whether the first-filed court or the court from the subsequent action applies the first-filed rule and balances the convenience factors. *Compare MSK Ins., Ltd. v. Employers Reinsurance Corp.*, 212 F. Supp. 2d 266, 267 (S.D.N.Y. 2002) *with Wyler-Wittenberg v. MetLife Home Loans, Inc.*, 899 F. Supp. 2d 235 (E.D.N.Y. 2012); *Michel v. Petco Animal Supplies Stores, Inc.*, 404 F. Supp. 3d 685 (E.D.N.Y. 2017). In 2010, the Second Circuit has held no abuse of discretion for the district court of the subsequent action to consider the first-filed rule and balance the convenience factors, even though the case was first filed in the United States District Court for the Eastern District of Louisiana. *New York Marine & Gen. Ins. Co.*, 599 F.3d at 113.

[3] The first special circumstance is "improper anticipatory actions," which are cases where a party files a declaratory judgment action in an apparent effort to win the race to the courthouse. *See id.* at 275-76; *see also Amorphous v. Flipboard, Inc.*, No. 15 CIV. 5802 (KPF), 2016 WL 1651868, at *3 (S.D.N.Y. Apr. 26, 2016). The second special circumstance is "where forum shopping *alone* motivated the choice of situs for the first suit." *Wasau*, 522 F.3d at 276. Neither special

"Where special circumstances are not present, a balancing of conveniences is necessary." *Wausau*, 522 F.3d at 276. The Second Circuit has held, "factors relevant to the balance of convenience analysis are essentially the same as those considered in connection with motions to transfer venue pursuant to 28 U.S.C. § 1404(a)." *Id.*

Where the first-filed rule is applicable, the decision to stay, dismiss or transfer a proceeding rests within the district court's discretion. *Id.* at 247-48. "The Court should take whichever action it deems proper to 'avoid duplication of judicial effort, avoid vexatious litigation in multiple forums, achieve comprehensive disposition of litigation among parties over related issues, and eliminate the risk of inconsistent adjudication." *Id.* (citing *Regions Bank v. Wieder & Mastroianni, P.C.*, 170 F. Supp. 2d 436, 439 (S.D.N.Y. 2001)). This disposition is not a "rigid test, but require[s] instead the district court consider the equities of the situation when exercising its discretion." *Id.* (quoting *Curtis v. Citibank, N.A.*, 226 F.3d 133, 248 (2d Cir. 2000)).

Stays or dismissals are inappropriate where they fail to serve the purposes underlying the first-filed rule. *Wyler-Wittenberg*, 899 F. Supp. 2d at 247 (holding that a stay would require the court to reexamine parallel issues decided in earlier actions and would be a waste of judicial resources, and a dismissal is inappropriate due to the individuals who opted into the case). However, a court can transfer a case pursuant to 28 U.S.C. § 1404(a), which provides, in relevant part:

> for the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

---

circumstance is present here. Pls.' Br. 5 ("This was not a forum shopping situation"); *see also id.* at 13.

*Wyler-Wittenberg*, 899 F. Supp. 2d at 248 (quoting 28 U.S.C. § 1404(a)).

The inquiry on a motion to transfer venue is twofold: (1) whether plaintiffs could have brought the case initially in the proposed transferee forum, and (2) transfer would promote the "convenience of the parties and witnesses in the interest of justice." *Wyler-Wittenberg*, 899 F. Supp. 2d at 248; *see also Michel*, 404 F. Supp. 3d at 688. Courts weigh a number of factors in making a § 1404 determination, none of which are singly dispositive:

> (1) the convenience of the witnesses; (2) the convenience of the parties; (3) the locus of operative facts; (4) the availability of process to compel the attendance of unwilling witnesses; (5) the location of relevant documents and the relative ease of access to sources of proof; (6) the relative means of the parties; (7) the district court's familiarity with governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interest of justice.

*Id.* at 248-49; *see also Wausau*, 522 F.3d at 275 (listing factors for balance of convenience and interest of justice analysis). "[T]he most important consideration is the convenience of the forum on party and non-party witnesses." *Id.* at 249.

The Second Circuit has held that the "first-filed rule is only a 'presumption' that may be rebutted by proof of the desirability of proceeding in the forum of the second-filed action." *Wausau*, 522 F.3d at 275; *see also New York Marine & Gen. Ins. Co.*, 599 F.3d at 113. As such, courts have held that the party opposing application of the first-filed rule has the burden to show that an exception to first-filed rule exists. *See, e.g.*, *Santana v. Cavalry Portfolio Servs.*, LLC, No. 19 CIV. 3773 (PAE), 2019 WL 6173672, at *4 (S.D.N.Y. Nov. 19, 2019); *Amorphous v. Flipboard, Inc.*, No. 15 CIV. 5802 (KPF), 2016 WL 1651868, at *2 (S.D.N.Y. Apr. 26, 2016); *Reliance Ins. Co. v. Six Star, Inc.*, 155 F. Supp. 2d 49, 54 (S.D.N.Y. 2001); *see also Michel*, 404 F. Supp. 3d at 688-89. However, the Second Circuit has also held that in the case where the court considers the "balance of convenience" factors in tandem with the factors under 28 U.S.C. § 1404(a), the party moving for a transfer of venue has the burden of showing by clear and

convincing evidence that transfer is warranted. *New York Marine & Gen. Ins. Co.*, 599 F.3d at 113-14; *see also Wausau*, 522 F.3d at 276.

## DISCUSSION

*1. First-Filed Rule*

Defendants argue that the "*Llagas* Louisiana case present sufficient overlap that the 'first-to-file' rule should apply." Defs.' Br. 8, DE 47-1.

In *Wyler-Wittenberg v. Metlife Home Loans, Inc.*, Judge Spatt held, in a collective action under the Fair Labor Standards Act ("FLSA"), that sufficient overlap existed between the parties, claims and the relief to warrant the application of the first-filed rule. *Wyler-Wittenberg*, 899 F. Supp. 2d at 244. This was true even though none of the opt-in plaintiffs in the collective action before the court overlapped with the plaintiffs from the previous actions, but plaintiffs from all of the cases were employees with similar job titles. *Id.* The court's findings were buttressed by how all of the cases involved unpaid wages and overtime claims under the FLSA, even though the state law labor law claims differed between the case before the court and the previous actions. *Id.* at 245.

Here, the overlap among parties, claims, and relief sought exceeds that presented in *Wyler-Wittenberg*. Llagas is a named plaintiff and the putative class representative in both actions. Compl.; La. Pet. Nearly all defendants appear in both cases; more importantly, the defendants sued in both cases are alleged to be part of a single business enterprise that plaintiffs have dubbed the "Sealift Fleet." Compl. ¶ 2(i)-(x); La. Pet. ¶¶ 2-3. Both actions allege violations of the same statutes: 46 U.S.C. §§ 8106, 8701, 10302, 11107, and 10313. Compl. ¶¶ 22-29, 36, 53; La. Pet. ¶¶ 6-13. As noted, both actions seek substantially the same relief, with

the exception of the writ of attachment. Compl. ¶¶ 18-19; La. Pet. 7-9. Lastly, both actions involve the same attorneys. Docket Sheet.

Plaintiffs attempt to tie this case to a class action pending in this District—*Dziennik v. Sealift, Inc.*, No. 05-CV-4659. Pls.' Br. 2, 3 & n2, 20, 25. However, Judge Feuerstein, who previously presided over this case, has already denied a motion to treat this case and *Dziennik* as related cases. Electronic Order dated July 30, 2019. Moreover, there is apparently a substantive difference between this case and *Dziennik*. As Llagas has argued, "the critical distinction between the New York Case [*Dziennik*] and the instant matter is that the Sealift defendants in the New York Case had direct employment contracts with the foreign seafarers, whereas, in the instant matter, the Sealift Defendants have absolutely no contracts of any nature with the Plaintiff or putative class members." La. DE 36-1 at 11; Defs.' Reply Br. 6 n.2.

Inexplicably, plaintiffs' argue that the district court in the Western District of Louisiana is "not intimately familiar with the legal issues and facts pertinent to this instant case." Pls.' Br. 8-11. A cursory perusal of the procedural history, only some of which is reproduced above, belies this contention. As part of the long, intricate pathway travelled by this litigation, the magistrate judge there supervised discovery, and issued numerous decisions on a motion to transfer venue, motion to strike removal, motion to stay litigation, motion to compel, and a motion to certify a class. The district court decided numerous appeals on the above motions, and issued numerous orders, judgments, and an amended judgment.

Lastly, the complaint's expansion of time to seek relief dating back to July 2006—a broader period than that covered by the Louisiana action—does not alter the analysis concerning the application of the first-filed rule. Pls.' Br. 11.

10

*2. Transfer of Venue*

A transfer of venue is appropriate in this case.[4] Plaintiffs could have brought the case in the Louisiana suit as evidenced by the first-filed analysis, and court in Western District of Louisiana held that venue was proper. La. DE 22. The Court proceeds next to balance of convenience factors. Because the Court considers the balance of convenience analysis in tandem with the § 1404 factors, which are "essentially the same," defendants bear the burden of proof by clear and convincing evidence that transfer is warranted. *Cf. New York Marine & Gen. Ins. Co.*, 599 F.3d at 113-14; *Wausau*, 522 F.3d at 276.

Here, most of the factors are largely neutral, except for the factors of trial efficiency and interest of justice, which given the extensive history of litigation of this case in Louisiana, such factors overwhelmingly compel transfer. *See, e.g.*, Defs.' Br. 15; Defs.' Reply Br. 14 (defense witnesses have already been called for deposition as part of Louisiana action, and defendants represent they will continue to litigate in Louisiana); DE 47-4 at 3 (plaintiffs' witnesses consisting of plaintiffs from Philippines and the deposition of a deceased non-party); *Commodity Futures Trading Comm'n v. EOX Holdings LLC*, No. 18 CIV. 8890 (GBD), 2019 WL 5203661, at *7 (S.D.N.Y. July 31, 2019) ("Witnesses "under [a d]efendant's control . . . would . . . be available to testify in either venue."); *Strauch v. Computer Scis. Corp.*, No. 14-CV-956 (JBA), 2015 WL 13821352, at *3 (D. Conn. Feb. 24, 2015) (holding no single locus of operative events for failure to pay overtime case); *Lapushner v. Admedus Ltd.*, No. 18-CV-11530 (ALC), 2020

---

[4] A stay is inappropriate here because the retention of jurisdiction would not serve the aims of the first-filed rule of avoiding duplicative decisions and promoting judicial efficiency. Similarly, a dismissal is not warranted because of the potential for a substantive effect on the claims. *Cf. Wyler-Wittenberg*, 899 F. Supp. 2d at 247; *see also Michel*, 404 F. Supp. 3d at 687 n.1. This opinion, limited only to the question of transfer, should not be seen as having any effect on the merits of the action.

WL 777332, at *4 (S.D.N.Y. Feb. 14, 2020) ("In today's modem world of electronic documents, the location of relevant documents is a largely neutral factor."); *Wyler-Wittenberg*, 899 F. Supp. 2d at 249 ("where an action does not involve complex questions or another state's laws, courts in this district accord little weight to this factor [the district court's familiarity with governing law] on a motion to transfer").[5]

The factor of trial efficiency favors transfer of the case. The district court in the Western District of Louisiana has had this case in 2017, supervised discovery, issued multiple rulings and appeals. The Louisiana case is currently in arbitration, and closer to the ultimate resolution of the case.

The interest of justice factor likewise favors transfer of the case. In bringing this action, plaintiffs transparently attempt to relitigate rulings in from the Louisiana action that are unfavorable to them. *Cf. United States Sec. & Exch. Comm'n v. Alpine Sec. Corp.*, 768 F. App'x 93, 94 (2d Cir. 2019). The many issues that have been litigated and reconsidered in Louisiana should not be shuttled through this Court for an attempted end-run. As plaintiffs correctly observe, "[t]he purpose of the first-to-file rule is to 'avoid conflicting decisions and promote judicial efficiency,' while respecting principles of federal comity." Pls.' Br. 12 (quoting *Speedfit LLC v. Woodway USA, Inc.*, 53 F. Supp. 3d 561, 571 (E.D.N.Y. 2014)); *see also*

---

[5] As both parties acknowledge, both the Eastern District of New York and the Western District of Louisiana are familiar with admiralty and maritime laws of the United States. Pls.' Br. 20; Defs.' Reply Br. 17; *see also* N.Y. CTY. LAWYERS ASS'N COMM. ON FED. CTS., THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK: A RETROSPECTIVE (1990-2014) 3 (2015), https://img.nyed.uscourts.gov/files/forms/EDNY_Retrospective%20_1990-2014.pdf (last visited Apr. 1, 2020) (discussing how the Eastern District of New York was created to handle the vast amount of admiralty cases coming from the Port of New York); *In re Stokes*, No. CV 16-14645, 2016 WL 7012301, at *4 (E.D. La. Dec. 1, 2016) (discussing how familiarity with general maritime law is "standard throughout the Fifth Circuit").

*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).  The application of the first-filed rule here promotes such aims.  Therefore, the interest of justice favors transfer of this case.

Based on the totality of the circumstances, and following the first-filed rule, the Court finds that defendants have met their burden of demonstrating that a transfer to the United States District Court for the Western District of Louisiana, where a parallel action is pending, would be in the interests of convenience and fairness.

## CONCLUSION

Based on the foregoing, defendants' motion is GRANTED, and the action shall be transferred to the United States District Court for the Western District of Louisiana where a parallel action is pending.

**SO ORDERED.**

Dated: Central Islip, New York
      April 2, 2020                        /s/ Gary R. Brown
                                                      GARY R. BROWN
                                                      United States District Judge